# GEORGE P. GRAFF

*v.*

## EGBERT B. BROWN.

1. CONTINUANCE—*obviated by admitting affidavit.* There is no error in refusing a continuance on the ground of the absence of material witnesses, where the other party admits in evidence the affidavit showing what they will testify.

2. SAME—*illness or absence of counsel.* Where there is but a single issue of fact to be tried, and it is not complicated, and no question of law requiring an average lawyer to spend much time in investigating, the absence of the principal counsel and the illness of the assistant counsel, afford no

sufficient ground for a continuance, where it is not shown that other competent counsel could not have been employed by reasonable effort.

3. EVIDENCE—*reputation as to solvency.* Where the question of the insolvency of the maker of a note is directly put in issue by the pleadings, and does not come up incidentally, evidence of the financial reputation of such maker is inadmissible. Even in cases when admissible, it must be his reputation in his neighborhood and among those with whom he associates and does business.

WRIT OF ERROR to the Circuit Court of Calhoun county; the Hon. CYRUS EPLER, Judge, presiding.

Mr. H. CASE, for the plaintiff in error.

Messrs. DUMMER, BROWN & RUSSELL, for the defendant in error.

Mr. JUSTICE SCHOLFIELD delivered the opinion of the Court:

This was an action of assumpsit, by the assignee against the assignor of a promissory note. The note was made and assigned in the State of Missouri, but since it is agreed that the law of Missouri in respect of the duties and liabilities of assignors, (except in requiring protest and notice, which are here sufficiently proved,) is the same as the law of this State, the place of the contract is immaterial to the decision of the questions raised. No suit was brought against the maker of the note at its maturity, but plaintiff alleged in his declaration, and introduced evidence to prove, that the prosecution of such a suit would have been unavailing, because of the insolvency of the maker, and this was the only question at issue between the parties.

It appears from the record, that on the 14th of April, 1874, the defendant made a motion, and filed his affidavit in support thereof, for a continuance of the cause on account of the absence of a material witness; and, on the 16th of the same month, there having been no decision on defendant's motion, he withdrew it. On the same day, and after the defendant withdrew his motion, the plaintiff made a motion for a continuance of the cause, and filed his own affidavit and that of

his attorney, John J. Fitzsimmons, in support thereof. Plaintiff's affidavit is as follows:

"George P. Graff, the plaintiff in the above entitled cause, being duly sworn, states that he is not prepared to try said cause at this term of this court, for the following reasons, to-wit: That he is the plaintiff in this cause; that he had issued subpœnas for Samuel Moody and J. F. Conroy, of St. Louis, Missouri, to testify at the trial of this cause, at the present term of this court; that said subpœnas have been duly returned to this court by the sheriff, as having been duly served on said witnesses; that said witnesses were present at this term and in court, and that the plaintiff was ready for trial the day and at the time the cause was called for trial; that the defendant had a motion pending for a continuance at that time; that owing to a rush of business, the court had no time to dispose of said motion on that day; that said witnesses, Moody and Conroy, went to St. Louis that night by steamboat, against the protest of plaintiff; that they are not now here in court, or in the county of Calhoun; that said witnesses are material witnesses for the plaintiff; that he expects to prove by said Moody, that on the maturity of the note in controversy in this suit, and for one year preceding said time, the maker of said note, John How, was hopelessly and entirely insolvent, and that he has remained so ever since. Affiant would further state, that he expects to prove by said Moody, who was then the cashier of the Missouri Benevolent and Loan Association, that the said John How had no money on deposit at said time, nor for a long space of time preceding the maturity of said note, at the said Missouri Benevolent and Loan Association Bank, of St. Louis, Missouri. Affiant would also state, that he expects to prove by witness Conroy, who is also one of his attorneys in this case, the said fact, as above alleged, of John How's utter insolvency; that he also expects to prove by said Conroy, that he (plaintiff) has given a good, valuable and commensurate consideration to the said bank, as aforesaid, for said note in question in this cause; that he knows of no other witnesses by whom he can prove said facts as above recited; that

he can not procure the witnesses, or either of them, at this term of this court. Affiant would further state, that said Moody informed him that he (Moody) was so sick and suffering that it was impossible for him to stay longer. Affiant would also state that he is a physician, and that he believes said Moody was sick at the time of his departure.

" Affiant would further state, that the said J. F. Conroy, Esq., of St. Louis, Missouri, is and has been one of his attorneys from the beginning of this suit,—in fact, the principal in the case; that he can not safely proceed to trial in this case, without the presence of said Conroy; that affiant was led to believe, and did believe, that said cause was to be continued at the instance of defendant; that he was taken by *surprise* this morning when defendant withdrew his motion for a continuance," etc. ·

Fitzsimmons' affidavit is:

"That he was the senior counsel for plaintiff in said cause. and was totally unprepared to enter upon the trial of said cause at said term of the court, for two reasons:

"1st.    Because he was wholly taken by surprise by the defendant's withdrawing his own motion for a continuance, after he had ascertained that the said Conroy and the said Moody named in said affidavit, had departed from the State to St. Louis, and on account of his employer and principal client in the case, to-wit: the said Conroy, who had been attending court at this term, had left for St. Louis on the supposition that a continuance would be granted on the defendant's said motion.    And, (2d) because he (Fitzsimmons) was very sick, and wholly unable to enter upon the trial at that term on account of his extreme sickness."

Upon the motion coming up, and the court intimating that the reasons assigned were sufficient to authorize a continuance. the defendant admitted that the witnesses. if present, would testify to the facts stated in the plaintiff's affidavit, and the court thereupon overruled the motion for a continuance. On the trial, the affidavit was read in evidence to the jury, and

the court also instructed the jury that they were to consider the facts therein stated to be susceptible of proof, as if personally testified to by the witnesses therein named, on the trial; and that in their deliberations, such facts should have the same weight as if so proved.

It is insisted the court erred in overruling the motion for continuance, both because of the absence of the witnesses and the absence of the attorney.

We can not comprehend upon what ground the court should have ordered a continuance on account of the absence of the witnesses, when the defendant admitted the affidavit in evidence. It is enacted in § 44 of the Practice Act, (Rev. Stat. 1874, p. 780,) " Should the court be satisfied that such evidence would not be material on the trial of the cause, or if the other party will admit the affidavit in evidence, the cause shall not be continued." With the policy of the principle we have nothing to do. It was competent for the legislature to so enact, and it leaves no discretion with the court. As respects the other question, it was said in *Jarvis* v. *Shacklock et al.* 60 Ill. 378, " Illness of counsel would certainly be a good cause of continuance where the court can see that a fair trial is likely to be prevented by such illness, and the party moving for a continuance has shown no unreasonable carelessness." But we can not see, from the affidavits here, that the absence of the attorney would be likely to prevent a fair trial. There was but a single, and by no means complicated, question of fact, and no questions of law requiring the average lawyer to spend much time in investigating. It is not shown that other competent counsel could not be procured, or, within the time allowed for preparing for the trial, be advised as to the law and facts of the case as thoroughly as was the absent attorney. Moreover, plaintiff, on ascertaining the condition and restlessness of his attorney and witnesses, might have consented to a continuance before defendant withdrew his motion, and thus have obviated the necessity of his application. We think the ruling was within the reasonable exercise of the discretion vested in the court, in such cases, and therefore not erroneous.

On the trial, plaintiff offered to prove, by his own evidence, that "before and at the time of the maturity of said note, and for a long time afterwards, the financial reputation of John How, (the maker of said note,) on ''Change,' in St. Louis, Missouri, and among the business and mercantile circles of St. Louis, where said How resided and did business, was bad, and that the public opinion had been and was, on 'Change, and among said business and mercantile circles, that he was hopelessly insolvent at the time said note matured, and for a long time afterwards, and was still insolvent." The court ruled that the evidence was incompetent, and, we think, correctly so. Nor do we think the cases cited by plaintiff's counsel inconsistent with this ruling. In *The State* v. *Cochran*, 2 Dev. 63, the defendant was indicted for passing counterfeit money, and his counsel offered evidence that it was generally understood and believed by his neighbors and acquaintances that he was a moneyed man, and that he carried considerable money with him on his removal from Georgia, for the purpose of repelling the presumption of guilty knowledge, and the court held that the evidence was admissible, inasmuch as the question arose collaterally. In *Hand* v. *Brown*, 18 Vt. 87, the ruling was, "When the question in issue is with regard to the pecuniary responsibility of a person, witnesses may be allowed to express their opinion as to his insolvency, as derived from a personal acquaintance with him, and from his reputation, in this respect, in the community where he resides." Here, the question of the maker's insolvency is directly in issue. It is charged in the declaration as the basis of the right to recover, and it was incumbent on the plaintiff to prove, not his reputation merely in that respect, but the fact. If we shall accept as a correct statement of the law, what is merely thrown out as a suggestion by way of argument, in *Humphreys* v. *Collier et al.* Breese, 297, namely: "that the insolvency of the maker might have been proved by facts tending to show such insolvency connected with general reputation as to that point," it is obvious, it would not help the plaintiff's position. It does not appear from the offer that How did

business "on 'Change," or that he did business with the "business and mercantile circles" in St. Louis, so that they could have had a reasonable opportunity to know what his financial condition was. True, the offer assumes he did business and resided in St. Louis, wherein are business circles and an exchange; but with whom did he do business? Not *necessarily* "on 'Change" or in the "business circles." The offer is not to prove what was his financial standing with his *neighbors* and those with whom he *transacted business*, who are presumed to have had opportunity to know about his solvency, but "on 'Change" and in the "business and mercantile circles of St. Louis," where, for aught that appears, there may have been no opportunity to learn the facts necessary to constitute his insolvency. Evidence of the general character of an individual, when admissible, is limited to what his neighbors and those with whom he most usually associates and transacts business--in short, to those who have the best opportunity to know the facts—generally say about him in respect to the subject under inquiry, and a question not thus limited is never admissible.

Objections are urged to several of the instructions given at the instance of the defendant, but such of these as we would be inclined to regard as substantial, rather than hypercritical, are obviated by the amended record filed by our permission since the argument of plaintiff's counsel was prepared.

With regard to the question raised as to the sufficiency of the evidence to sustain the verdict, while we admit the evidence is conflicting, and that there is much plausibility in the view of the counsel for plaintiff as to its relative weight, we are not clearly satisfied that the conclusion to which the jury arrived is unauthorized, and can not, therefore, interfere.

The judgment is affirmed.

*Judgment affirmed.*