No. 9907.

THE PEOPLE *v.* SANDY.

Decided January 9, 1922.

Proceeding against defendant in error for a violation of the prohibition act. Judgment discharging defendant.

*Reversed.*

1.  INTOXICATING    LIQUORS—*Manufacture—Possession—Constitutional Law.*    Manufacturing and having in one's home intoxicating liquor for personal use, is a violation of the provisions of chapter 141, S. L. 1919, concerning intoxicating liquors, and the law is not unconstitutional as being in violation of the fourteenth amendment.

*Error to the County Court of Ouray County, Hon. E. G. MacAdams, Judge.*

Mr. LEE W. BURGESS, Mr. VICTOR E. KEYES, attorney general, Mr. CHARLES ROACH, deputy, for the people.

No appearance for defendant in error.

*En banc.*

MR. JUSTICE TELLER delivered the opinion of the court.

THE defendant in error was tried before a justice of the peace in Ouray County upon a charge of unlawfully having manufactured and having in her possession fifteen gallons of cranberry wine, containing five per cent alcohol, and not manufactured or used for medicinal purposes. From a judgment of conviction she appealed to the county court. There the case was tried on a stipulation as to the facts, which stipulation was as follows:

"That said defendant Julia Sandy, at the time. and in the place mentioned in the complaint in this action filed, did have in her possession at her home north of the City of Ouray in the County of Ouray in Colorado, approxi-

mately fourteen gallons of cranberry wine, containing five per cent alcohol; that said wine was intoxicating; and that said wine was manufactured there by her subsequent to an enactment of that certain statute of Colorado entitled:" Then follows the title of the initiated act, approved at a general election on November 5, 1918, commonly known as the "Bone Dry Law." The stipulation further states that said wine was manufactured by defendant after said statute was in effect as a public statute of the state; that said wine was manufactured by her solely for her own use.

The court rendered judgment discharging defendant, stating, as ground therefor, that:

"Said portion of the Bone Dry prohibition law as therein stated is violative of one of the fundamental principles on which our government is founded, namely, the inalienable right of all and every person to property. Such right is incorporated in the Declaration of Independence, and the constitution of both the United States and the State of Colorado, is an inherent right and cannot be taken from any person without an interference with the safety and happiness of the people," etc.

The cause is before us on error to the said judgment.

The statute in question appears as chapter 141, Laws of 1919, and includes the following provision:

"No person, association or corporation shall keep or have in his or its possession, for personal use or otherwise, any intoxicating liquors or permit another to have or keep or use intoxicating liquors on any premises owned or controlled by him, or give away or furnish any intoxicating liquors to another."

If the views of the trial court were correct, the police power of the state would be seriously limited, and the rights of property be made superior to the right of the state to legislate for the general welfare, so far as property might be affected.

If the state may prohibit the keeping of intoxicating liquors in stores, shops, etc., as it does in the act of 1917, it interferes with the rights of property as truly as it does

when the prohibition is extended to the home or the person. The interference with property rights in the two cases differs only in degree.

Yet, in *Gallovich v. The People*, 68 Colo. 299, 189 Pac. 34, this court held that said act of 1917 does not violate the Constitution. Referring to the undoubted power of the state to prohibit the sale or manufacture of intoxicating liquors, we there said:

"It necessarily follows, therefore, that the state has power to adopt such reasonable laws as may be necessary to make such prohibition effective. *Crane v. Campbell*, 245 U. S. 304, 62 L. Ed. 304, 38 Sup. Ct. 98. It is manifest that the statute in question is a reasonable and appropriate means for such purpose."

In the federal case to which reference is made, the court had before it a statute of Idaho which prohibited the possession of liquors in prohibition districts, except under specified conditions. The Idaho statute was held by the supreme court of that state to be constitutional. That judgment was affirmed by the federal tribunal which said:

"It must now be regarded as settled that, on account of their well-known noxious qualities and the extraordinary evils shown by experience commonly to be consequent upon their use, a State has power absolutely to prohibit manufacture, gift, purchase, sale or transportation of intoxicating liquors within its borders without violating the guarantees of the Fourteenth Amendment. (Citing cases.)

As the State has the power above indicated to prohibit, it may adopt such measures as are reasonably appropriate or needful to render exercise of that power effective. (Citing cases.)

And, considering the notorious difficulties always attendant upon efforts to suppress traffic in liquors, we are unable to say that the challenged inhibition of their possession was arbitrary and unreasonable or without proper relation to the legitimate legislative purpose.

We further think it clearly follows from our numerous decisions upholding prohibition legislation that the right

to hold intoxicating liquors for personal use is not one of those fundamental privileges of a citizen of the United States which no State may abridge. A contrary view would be incompatible with the undoubted power to prevent manufacture, gift, sale, purchase or transportation of such articles—the only feasible ways of getting them. An assured right of possession would necessarily imply some adequate method to obtain not subject to destruction at the will of the State." *Crane v. Campbell*, 245 U. S. 304.

The question presented having been thus determined, it follows that the judgment is wrong, and it is therefore reversed.

MR. CHIEF JUSTICE SCOTT and MR. JUSTICE BAILEY not participating.